# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOHN WALKER, ) | |
| ) | |
| ) | CIVIL ACTION NO. 0:08-241-TLW-JRM |
| Petitioner, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| JON OZMINT, DIRECTOR SCDC, ) | |
| WARDEN OF MCCORMICK ) | |
| CORRECTIONAL INSTITUTION, ) | |
| ) | |
| Respondents. ) | |
| _____) | |

Petitioner, John Walker ("Walker"), is an inmate with the South Carolina Department of Corrections serving a sentence of twenty-four (24) years for armed robbery. On January 28, 2008, Walker filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case was automatically referred to the undersigned pursuant to Local Rule 73.02(B)(2)(c) and (e) (D.S.C). Respondents filed a motion for summary judgment on March 31, 2008. An order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was entered on April 1, 2008. Walker filed his response to the motion for summary judgment on April 25, 2008.

A Report and Recommendation ("R&R") was issued by United States Magistrate Judge George C. Kosko on August 18, 2008 recommending that Respondents' motion for summary judgment be granted solely on the grounds of Respondents' statute of limitations defense. The R&R was rejected and a new R&R was required addressing Walker's claims on the merits. The case has now been reassigned to the undersigned.

1

**Background and Procedural History**

The procedural history of Walker's case is detailed in Magistrate Judge Kosko's R&R and will not be repeated here.

Walker was convicted of the armed robbery of a video poker parlor in Dorchester County which occurred on October 2, 1999. He was arrested on October 7, 1999 and convicted after a jury trial. He was represented by Gene Dukes, Esquire.

The victim, John A. Yonker, testified that he was working alone at the video poker parlor and that he was beaten and robbed by Walker. Yonker testified that while he never saw a gun, Walker told him he had a gun, held his hand in his pocket as if he were holding a gun, and poked him in the side with what he thought was a gun. (App. 29-31). Yonker further testified that Walker forced him to open the video poker machines so he could take the money in them. During this process, Walker told Yonker to get on his knees and that hew as going to kill him. (App. 31). At that point, Yonker decided to resist and cut Walker on the neck with a pocket knife. Walker then jumped through a glass door to escape.

Walker testified at trial that he was playing the video poker machines and that Yonker attacked him because he (Yonker) thought that he (Walker) had broken one of the machines. After Yonker cut him, he fled to this girlfriend's house and she dressed his wounds. (App. 143-149).

**Claims for Relief**

Walker asserts that he is entitled to a writ of habeas corpus on the following grounds:

**GROUND ONE:**   Ineffective Assistance of Counsel

**SUPPORTING**
**FACTS:**   I would contend that my trial counsel was inept, and constitutionally ineffective for failing to file me a notice of intent to appeal. When I and my girlfriend

|||
|---|---|
| | specifically requested counsel to do so. Attach is a copy of a [notarized] letter of the conversation my girlfriend had with my trial counselor pertaining to him filing my direct appeal. |
| **GROUND TWO**: | Ineffective Assistance of Counsel |
| **SUPPORTING FACTS**: | It was incumbent upon my counsel as my advocate to object to the Prosecutor questioning me at (trial) about why I didn't tell the Police what had happened in the beginning when I had the right to remain silent. This sequence of events was fatal to me at trial, because it mad me look like a liar, and there was no curative instruction to cure the taint. |
| **GROUND THREE**: | Ineffective Assistance of Counsel |
| **SUPPORTING FACTS**: | Counsel was ineffective for failing to request a jury charge on strong armed robbery as a lesser offense, when asked why he did not request a charge on common law robber, defense counsel said he could not remember. That response was not a valid strategic reason to avoid a finding of ineffectiveness. |

## **Discussion**

Walker asserts that his trial counsel was ineffective. His claims were addressed by the PCR court and presented for review to the South Carolina Supreme Court.

Since Walker filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to

> any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective

4

assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000).

("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

### 1. Direct Appeal

The right to effective assistance of counsel extends to direct appeal. Pennsylvania v. Finley, 481 U.S. 551, 559 (1987). The Strickland standard is used to evaluate whether counsel was constitutionally deficient for failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470 (2000) and Frazier v. South Carolina, 430 F.3d 696, 704-705 (4th Cir. 2005). "To establish a Sixth Amendment violation based upon counsel's failure to appeal, [the petitioner] must prove that (1) counsel was ineffective, and (20 a reasonable probability that, but for counsel's ineffectiveness, an appeal would have been filed." United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (citing Roe, 528 U.S. at 477-83).

If counsel has consulted with the defendant, the failure to file an appeal is deficient only if it contradicts the defendant's instructions to appeal. Roe, 528 U.S. at 478. In the absence of a direct instruction from a defendant to appeal, the question of whether counsel's failure to appeal is constitutionally deficient depends upon "whether counsel in fact consulted with the defendant about an appeal." Roe, 528 U.S. at 478.

> If counsel fails to consult, the defendant may demonstrate prejudice by showing that a rational defendant would want to appeal. The defendant may do this by demonstrating either that (a) there were non-frivolous issues for appeal, or (b) he had adequately indicated his interest in appealing. The mere presence of non-frivolous issues to appeal is generally sufficient to satisfy the defendant's burden to show prejudice. Attempting to demonstrate prejudice based on a reasonably obvious interest in pursuing an appeal, however, necessitates an additional showing that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed counsel to file an appeal.

Frazier v. South Carolina, 430 F.3d at 708-709 (internal citations and quotation marks omitted).

At the PCR hearing, Walker testified that he told Mr. Dukes to file an appeal. (App. 266). He also tried to introduce an undated letter from his girlfriend that states that she attempted to contact Mr. Dukes about an appeal. (App. 267). However, the State objected and the letter was not admitted into evidence. (App. 287).[1] The PCR court found Walker's testimony to be not credible, and the testimony of Mr. Dukes to be credible. (App. 293-294). Mr. Dukes testified that had Walker requested an appeal he would have filed the notice, and because he was appointed, the appeal would have been sent to "the appellate division," i.e., the south Carolina Commission on Indigent Defense, Division of Appellate Defense. Thus the PCR court implicitly concluded that Walker did not consult with Mr. Dukes concerning an appeal.

The undersigned concludes that Walker fails to meet the standard in Roe because he has not shown that he reasonably demonstrated his desire to appeal to Mr. Dukes and he has not stated non-frivolous grounds for a direct appeal.

**2. Failure to Object to Cross-Examination**

Walker asserts that Mr. Dukes was ineffective for failing to object to certain questions asked to him on cross-examination. The PCR court concluded that there was no proper basis for objection. (App. 292-293).

In Miranda v. California, 384 U.S. 436 (1966), the Supreme Court erected procedural safeguards to protect a defendant's Fifth Amendment rights during a custodial interrogation. The Supreme Court further held in Doyle v. Ohio, 426 U.S. 610 (1976), that the Due Process Clause of the Fourteenth Amendment forbids impeachment of a defendant at trial for choosing to remain silent

---

[1] A copy of this letter is attached to the present petition. The undersigned has not considered the letter in preparing this Report and Recommendation, because the letter was not considered by the PCR court.

7

after Miranda warning having been given.  *See also* Wainwright v. Greenfield, 474 U.S. 284 (1986).

Walker casts this claim as a failure to object to impeachment based on "comments about a defendant's post arrest silence."  *See* Petition for Writ of Certiorari, p. 5 and Roseboro Response, p. 5.  Walker specifically references his cross-examination on page 153 of the trial transcript.  Review of the transcript shows there was no Doyle violation.

Walker was arrested five (5) days after the incident.  On direct examination, Walker testified that he had no gun and there was no robbery, but that Yonker attacked him and cut him because Yonker thought he had damaged a video poker machine.  On cross-examination the Solicitor asked Walker why he did not go to the police and report being assaulted by Yonker during the period between the fight and the arrest.  The PCR court correctly found there was no basis to object to this question.

### 3.  Lesser Included Offense

The trial court instructed the jury on the statutory elements of armed robbery under South Carolina law. (App. 174-178). *See* S.C.Code Ann. § 16-11-330.  Common law robbery, i.e., unarmed robbery, is a lesser included offense of armed robbery under South Carolina law. State v. Muldrow, 348 S.C. 264, 559 S.E.2d 847 (2002) ("Muldrow II").

The statute states:

> A person who commits robbery while armed with a pistol, dirk, slingshot, metal knuckles, razor, or other deadly weapon, or <u>while alleging, either by action or words, he was armed while using a representation of a deadly weapon</u> or any object which a person present during the commission of the robbery reasonably believed to be a deadly weapon, is guilty of a felony and, upon conviction, must be imprisoned for a mandatory minimum term of not less than ten years or more than thirty years, no part of which may be suspended or probation granted.  A person convicted under this subsection is not eligible for parole until the person has served at least seven years of the sentence. (emphasis added).

8

S.C.Code Ann. § 16-11-330(A).

Approximately one (1) month before Walker's trial the South Carolina Court of Appeals held that the phrase "representation of a deadly weapon" did not require there "to be an object that one present during the commission of the robbery reasonably believed to be a deadly weapon." State v. Muldrow, 340 S.C. 450, 452-453, 531 S.E.2d 541, 542-543 (Ct. App. 2000) ("Muldrow I"). The court held that "the phrase 'representation of a deadly weapon' includes words that convey to a victim the thought that a robber possessed a deadly weapon." *Id.* Certiorari was not granted in the Muldrow case until after Walker's trial. In Muldrow II, the Supreme Court reversed the Court of Appeals' holding that words alone alleging that the robber is armed are insufficient to support an armed robbery conviction, but that "the State must still show evidence corroborating the allegation of being armed, i.e., the use of a physical representation of a deadly weapon, to establish armed robbery." Muldrow II, 348 S.C. at 269.

The PCR court found that Mr. Dukes was not ineffective because "there must be evidence presented to the jury that the charge [for the lesser included offense] is appropriate." (App. 293). In this case Walker testified at trial that he was not armed during the incident. However, based on Muldrow I and Muldrow II, the undersigned concludes that this testimony did not necessarily entitle Walker to a charge of robbery.

Walker testified that he did not rob the video poker parlor, but that he was attacked by Yonker. In other words, Walker's defense was that he was the victim and that Yonker had been the perpetrator. Walker denied all of Yonker's testimony relating to the robbery.

The issue for the jury was not whether Yonker reasonably believed whether Walker was armed, but whether a robbery actually occurred. After less than thirty (30) minutes of deliberation,

the jury decided that Walker had robbed Yonker while armed with a deadly weapon. The evidence was sufficient under Muldrow I and II. Walker told Yonker he had a gun, held his hand in his pocket to show he had a weapon, and poked Yonker in the side with an object thought to be a gun. Thus, even if Mr. Dukes was ineffective for failing to request a charge on the lesser included offense, Walker has not shown prejudice.

### Conclusion

The undersigned concludes that the state court's application of the Strickland analysis was not contrary to or an unreasonable application of Supreme Court law. Based on a review of the record, it is recommended that Respondents' motion for summary judgment be **granted**, and the petition **dismissed** without an evidentiary hearing.



_____
Joseph R. McCrorey
United States Magistrate Judge

February 24, 2009
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).